FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2020 FEB 24  PM 1:30

MARGARET BOTKINS, CLERK
CASPER

Patrick Q. Hustead, Esq.  No. 6-2864
Connor L. Cantrell, Esq.  No. 7-6195
THE HUSTEAD LAW FIRM,
*A Professional Corporation*
4643 South Ulster Street, Suite 1250
Denver, Colorado 80237
Telephone: (303) 721-5000
Fax: (303) 721-5001
Email: clc@thlf.com
*Attorney for Aspen American Insurance Co.*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

| | |
|---|---|
| ASPEN AMERICAN INSURANCE COMPANY, a Texas corporation,<br><br>Plaintiff,<br><br>vs.<br><br>WOLVERINE RESOURCES, LLC, a Wyoming limited liability company,<br><br>Defendant. | Civil Action No. 20-CV-31-NDF |

### COMPLAINT

Plaintiff, Aspen American Insurance Company, ("AAIC" or "Surety"), by and through its undersigned counsel, The Hustead Law Firm, *A Professional Corporation*, hereby submits its Complaint against Defendant Wolverine Resources, LLC ("Defendant," Wolverine," or "Indemnitor").

Receipt # MS002362
Summons: ✓ issued
____ not issued

## I. PARTIES

1. AAIC is a company organized and incorporated under the laws of the State of Texas; AAIC's principal place of business is 175 Capital Boulevard, Suite 100, Rocky Hill, CT 06067.

2. Wolverine is a Wyoming limited liability company that, at all times alleged herein, conducted business in the State of Wyoming and has a principal place of business at 109 E. 17th Street, Suite 430, Cheyenne, Wyoming 82001.

3. Upon information and belief, Shane Reeves is the sole managing member of Wolverine, whose last known residence address is 2125 Kahala Circle, Castle Rock, CO 80104, and who has expressed an intent to remain in Colorado indefinitely.

## II. JURISDICTION/VENUE

4. AAIC hereby incorporates by reference all the allegations contained above as though set forth herein.

5. This Court has personal jurisdiction over Wolverine because it transacted business in and around Cheyenne, Wyoming, including, but not limited to, conducting oil and gas operations in and around Cheyenne, Wyoming and entering into contracts with AAIC in which Wolverine promised to post collateral with AAIC as set forth in the contracts and to reimburse AAIC for, among other things, any losses, expenses, payments, attorneys' fees, costs incurred by AAIC in the event AAIC incurs losses as a result of issuing construction surety Bonds on behalf of Wolverine. As such, Wolverine purposefully availed itself of the benefits and privileges of conducting business in Wyoming.

6. This Court has original subject matter jurisdiction over AAIC's claims pursuant to 28 U.S.C. § 1332 (diversity) because the amount of AAIC's claims against Wolverine exceeds $75,000 (AAIC seeks collateral in the amount of $135,000.00), and AAIC is a citizen of a different state than Wolverine.

7. As set forth above, AAIC is a citizen of Texas, where AAIC is incorporated. AAIC is also a citizen of Connecticut, its principal place of business. Wolverine's sole member is domiciled in Colorado and therefore a citizen of Colorado.

8. AAIC has conducted a diligent search to ascertain the domicile of the sole member of Wolverine, including, but not limited to, reviewing its underwriting files, reviewing the Secretary of State records, reviewing court filings, and conducting online research. Based on those searches, AAIC affirmatively alleges in good faith that neither Wolverine nor its sole member is a citizen of Texas or Connecticut. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 106-108 (3rd Cir. 2015).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to AAIC's claim occurred in or around Cheyenne, Wyoming.

### III. GENERAL ALLEGATIONS

10. AAIC hereby incorporates by reference all the allegations contained above as though set forth herein.

**A.  The Bonds**

11. AAIC, as Surety, has issued at least the following oil and gas blanket coverage surety bonds ("Bonds"), attached as Ex. 1 and incorporated herein by reference, on behalf of Wolverine, as principal:

| Date of Bond | Bond Number | Bond Amount |
|---|---|---|
| November 21, 2017 | SU14136 | $60,000.00 |
| November 21, 2017 | SU14137 | $25,000.00 |
| November 21, 2017 | SU14138 | $25,000.00 |
| March 7, 2018 | SU14162 | $25,000.00 |
| | **TOTAL** | **$135,000.00** |

12. Pursuant to the terms of the Bonds and prevailing law, AAIC has guaranteed that if Wolverine fails to take certain actions, the underlying bonded obligation will become due, demands for collateral will be made, and AAIC will pay the debt(s).

B. **The Indemnity Agreement**

13. As consideration for AAIC's issuance of the Bonds and other consideration, on or about November 21, 2017, Wolverine, as Indemnitor, executed an Agreement of Indemnity ("Indemnity Agreement") in favor of AAIC. A copy of the Indemnity Agreement is attached as Ex. 2 and incorporated herein by reference.

14. The Indemnity Agreement provides, in pertinent parts:

> WHEREAS an Indemnitor, in fulfillment of requirements imposed upon it or to further its business interests, may desire or be required to execute, give, or procure surety bonds, undertakings, guarantees, and other obligations, including any bond(s) predating this Agreement ("Bond" or "Bonds"), and has requested or may request Surety to write such Bonds, or to renew, continue, and/or refrain from canceling Bonds, whether in its own name or one of its subsidiary or affiliated companies, entities, divisions or operating units, alone or in concert with others.
>
> NOW THEREFORE, in consideration of Surety executing, renewing, continuing, and/or refraining from canceling Bonds for the benefit of any Indemnitor, including all of its present and/or future owned and or controlled subsidiaries and affiliates, entities, divisions and/or operating units, whether alone or in joint venture with others, and whether or not named herein, and their successors and assigns, Indemnitors agree as follows:
>
> 1. **Payment and Cooperation.** Indemnitors shall pay or cause to be paid to Surety promptly when due all agreed premium amounts. Indemnitors shall cooperate with Surety and provide Surety copies of requested documents as well as access to Indemnitors' books, records, personnel, and properties to allow Surety to: a) analyze, assess, and/or underwrite proposed bonds; b) investigate any claims against any Bonds; and/or to c) investigate at any time and as often as Surety deems appropriate, the Indemnitors' compliance with and/or status of performance of Indemnitors' obligations under this Agreement and the Bonds.

2. **Indemnity.** Indemnitors shall indemnify the Surety and save it harmless from and against any and all liabilities, claims, demands, payments, losses, damages, expenses, and costs to investigate and/or resolve claims which Surety may at any time incur or pay by reason of or arising out of its execution or nonexecution of any Bonds. Indemnitors shall place the Surety in funds to meet all of its liability under any Bond, promptly upon written request and before the Surety may be required to make any payment thereunder. The duty to indemnify and hold harmless also includes, without limitation, payment of Surety's losses, attorney's fees and expenses, and consultant's fees and disbursements incurred and/or paid with respect to any Bond: a) to investigate and/or resolve claims against the Bonds; b) in any action or proceeding between Indemnitors and Surety; and or c) in any action or proceeding between Surety and any third party. The duty to indemnify and hold harmless exists whether or not the claim is made against Surety as a joint and or several obligor and whether or not Indemnitors or any of them is then liable to or demanded to make a payment. A copy of the claim, demand, voucher, invoice, and/or other evidence of the potential liability of and/or payment by the Surety shall be prima facie evidence of the fact and amount of Indemnitors' liability to Surety under this Agreement.

3. **Additional Indemnity Terms.** The Indemnitors shall remain bound under the terms of this Agreement even if Surety, with or without notice to or knowledge of Indemnitors, may have accepted or released other agreements of indemnity or collateral from one or more Indemnitors or others. The rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to any and all other rights, powers and remedies which Surety may have or acquire against Indemnitors or others by operation of law or otherwise. Unless expressly stated to the contrary, this Agreement is not intended to and shall not be deemed to supersede any other indemnity agreement between one or more Indemnitors and Surety. Upon Surety's written demand, Indemnitors shall promptly deposit with Surety a clean, irrevocable letter of credit ("ILOC") on a form and from a bank acceptable to Surety, or shall provide another form of collateral acceptable to Surety (individually and collectively, the "Collateral") in the amount of any reserve Surety establishes for any existing liability or claim, and or any expenses associated therewith, whether or not any assertion or payment of such liability, claim, or expense has been made at the time of the Surety's demand. Further, Indemnitors expressly and specifically agree that Surety in its sole discretion and for any reason may by written demand require Indemnitors to secure within thirty (30) days the full and complete discharge of any and all Bonds ("Discharge Demand"). Within thirty-seven (37) days of Surety's Discharge Demand, Indemnitors shall provide to Surety Collateral as defined herein in the amount representing the total of any undischarged liability under the Bonds as determined by the Surety in its sole discretion. In the event of any increases in Surety's undischarged liability, Indemnitors shall supplement the Collateral to match the increase.

Surety shall have no obligation to release any Collateral provided to Surety, or remit to Indemnitors any interest or proceeds therefrom until Surety has received written releases or other documentation in form and substance satisfactory to Surety with respect to the discharge of Surety's obligations on all Bonds. Surety may apply the Collateral to any premium due, loss, cost and/or expense provided for in this Agreement. To the fullest extent allowed by law, Indemnitors waive any and all defenses or challenges to the provision of collateral pursuant to this Agreement. Indemnitors further expressly stipulate and agree that Surety will have no adequate remedy at law should Indemnitors fail to post any collateral required herein, and agree that Surety is entitled to specific performance of the obligation to post collateral.

13. **Assignment.** Upon the occurrence of a default by any or all of the Indemnitors under this Agreement or one or more of the Bonds, and or a declaration of a default by an obligee on one or more Bonds, Indemnitors hereby assign, transfer, and convey to Surety all of their rights, title and interest in Indemnitor's property, wherever located, including but not limited to: proceeds and products, goods, accounts, equipment, instruments, chattel paper, deposit accounts, securities, letters of credit, commodity accounts or contracts, rights to payment of money under contracts, and general intangibles, permits, licenses, conveyors, equipment, rolling stock, contracts, claims and rights under contracts, insurance policies and or surety bonds, ("Property"). Surety shall have the right, but not the obligation, to: a) take possession of any Property and or work under any contract underlying the Bonds; b) take possession of and use equipment, permits, licenses, records, and other Property, to investigate and or fulfill any obligations under any Bonds and or this Agreement; c) assert or settle claims in the name of one or more Indemnitors; and d) execute documents in the name of Indemnitors to fulfill or pursue obligations under the Bonds and or this Agreement.

15. By virtue of the definitions and representations in the Indemnity Agreement, Wolverine is, *inter alia*, obligated to post collateral with AAIC, cooperate with AAIC's investigation into claims, and is liable to AAIC as set forth herein.

C. **AAIC's Concerns About Exposure and Collateral Demands**

16. On or about January 13, 2020, AAIC sent written correspondence to Wolverine demanding collateral and seeking indemnity pursuant to the terms of the Indemnity Agreement. A copy of the demand is attached as Ex. 3 and incorporated herein by reference.

17. AAIC did not receive a response to this demand.

18. Wolverine's failure to respond to AAIC's demand has exacerbated AAIC's concerns about Wolverine's ability and intention to satisfy bonded obligations.

19. AAIC is concerned that there will be a shortfall of funds available to Wolverine to complete and pay for its bonded obligations.

20. AAIC is incurring attorneys' fees, costs, and expenses, and expects to continue incurring attorneys' fees, costs, and expenses on a near daily basis until this matter is resolved.

21. AAIC is exposed to substantial losses under its Bonds, for which Wolverine is liable.

22. All conditions precedent to bringing and maintaining this action have been met or have occurred.

### FIRST CLAIM FOR RELIEF
### (Breach of Express Contract)

23. AAIC hereby incorporates by reference all the allegations contained above as though fully set forth herein.

24. Wolverine entered into a valid and enforceable contract, the Indemnity Agreement, with AAIC.

25. Sufficient consideration supports the Indemnity Agreement.

26. AAIC substantially performed its obligations, if any, under the Indemnity Agreement.

27. Wolverine failed to meet its obligations under the Indemnity Agreement, which constitutes a material breach.

28. Wolverine's breach of the Indemnity Agreement has damaged AAIC, and Wolverine is liable to AAIC for all losses and expenses incurred by AAIC as a result of the

issuance of the Bonds, including, but not limited to, bond payments, attorneys' fees, consultant fees, expenses, and costs, all as provided by the terms of the Indemnity Agreement.

### SECOND CLAIM FOR RELIEF
### (Common Law Indemnification)

29. AAIC hereby incorporates by reference all the allegations contained above as though fully set forth herein.

30. Wolverine, as the principal under the Bonds, is required to indemnify and hold AAIC harmless from and against any and all liabilities, losses and expenses of any kind of nature, including, but not limited to, interest, court costs, expenses and attorney and consultant fees, imposed upon, sustained or incurred by AAIC on account of the issuance of the Bonds.

31. AAIC has made demand upon Wolverine to be indemnified and placed in funds for all losses sustained or to be sustained as a result of the issuance of the Bonds.

32. Wolverine has failed to meet its obligations to AAIC under Wyoming law.

33. Wolverine's failure to meet its obligations to AAIC under Wyoming law has damaged AAIC, and AAIC is entitled to damages.

### THIRD CLAIM FOR RELIEF
### (Injunctive Relief – Specific Performance)

34. AAIC hereby incorporates by reference the allegations contained above as though fully set forth herein.

35. Pursuant to the Indemnity Agreement, Wolverine is required to place AAIC in sufficient funds to cover any and all losses or expenses, including attorneys' and consultant's fees and costs, incurred or to be incurred by AAIC as a result of the issuance of the Bonds.

36. There is no adequate remedy at law for AAIC to recover the benefit of the Indemnity Agreement.

37. AAIC has performed any obligations owed to Wolverine under the Indemnity Agreement and/or Bonds.

38. AAIC requests specific performance on the provisions of the Indemnity Agreement, which require Wolverine to grant access to books and records and/or to place AAIC in sufficient funds to cover any possible liability or loss for which Wolverine is or will be obligated to indemnify AAIC under the terms of the Indemnity Agreement.

39. If Wolverine does not or cannot place AAIC in sufficient funds, AAIC requests an equitable lien in the amount of no less than $135,000, plus attorneys' fees ("Lien Amount") on any real property owned by Wolverine or its member.

40. If Wolverine does not or cannot place AAIC in sufficient funds, AAIC should also be given a valid equitable security interest, as collateral security in the Lien Amount, on any and all rights, title and interest of Wolverine in and to all items, property, documents, etc. identified in the Assignment (Thirteenth) paragraph of the Indemnity Agreement.

## FOURTH CLAIM FOR RELIEF
### (Injunctive Relief – *Quia Timet*)

41. AAIC hereby incorporates by reference the allegations contained above, as though fully set forth herein.

42. Under the equitable doctrine of *quia timet*, AAIC is entitled to have Wolverine place funds or other security with AAIC sufficient to cover any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including but not limited to, pre- and post-judgment interest at the maximum rate permitted by law accruing from the date of

the breach of the Indemnity Agreement or a breach of other agreements, court costs, counsel fees, costs of investigation, accounting, engineering, construction management and any other outside consulting fees from and against any and all such losses, fees, costs and expenses, which AAIC may sustain or incur by reason or consequence of having issued the Bonds as set forth more fully above and in the Indemnity Agreement.

43. Despite demand, Wolverine has failed to place AAIC in such funds in direct contravention of AAIC's *quia timet* rights.

44. Pursuant to the terms of the Bonds, AAIC has guaranteed that if Wolverine fails to take certain actions, the underlying bonded obligation will become due, and AAIC will pay the debt.

45. Unless AAIC obtains an Order establishing equitable liens, AAIC will not be adequately secured for its obligations under the Bonds.

46. If AAIC is unable to obtain an Order requiring Wolverine to place AAIC in collateral as requested in AAIC's demands, AAIC will be irreparably harmed.

47. AAIC is without a plain, speedy, or adequate remedy at law, pecuniary compensation would not afford adequate relief, it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief, and AAIC will be irreparably and permanently injured unless this Court grants the injunctive and equitable relief requested herein.

48. AAIC is entitled to preliminary and permanent injunctive relief enforcing its *quia timet* rights and granting AAIC a valid equitable lien in the Lien Amount upon all assets and real property in which Wolverine has an interest, such liens to remain in place until AAIC has been placed in funds, and restraining Wolverine and its sole member from transferring, disposing, or

otherwise liquidating any property owned by Wolverine, real or personal, beyond reasonable living expenses, during the pendency of this matter.

49. AAIC should also be given a valid equitable security interest in the Lien Amount on any and all rights, title and interest of Wolverine in and to all items, property, documents, etc. identified in the Assignment (Thirteenth) paragraph of the Indemnity Agreement.

50. Upon information and belief, Wolverine has equity in certain property and/or have received and continue to receive income and/or other intangible benefits from the operation of Wolverine as a direct result of AAIC's issuance of the Bonds or other agreements. The interests of equity and fairness dictate that such equity, income and/or other intangible benefits be converted to equitable liens until AAIC is properly placed in funds and/or repaid.

## FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment – Equitable Liens)

51. AAIC hereby incorporates by reference the allegations contained above, as though fully set forth herein.

52. AAIC conferred a benefit on Wolverine by extending surety credit and/or issuing the Bonds on behalf of Wolverine.

53. Wolverine accepted and appreciated that benefit by profiting from its operations, which would not have been possible without the issuance of AAIC's surety credit and/or the Bonds.

54. Wolverine further accepted and appreciated that benefit by virtue of the equity in their real and personal property as a direct result of these profits, which equity would not have been possible without the issuance of AAIC's surety credit and/or the Bonds.

55. Wolverine agreed to defend, indemnify, and post collateral with AAIC in exchange for and pursuant to the terms of the Indemnity Agreement.

56. By failing and refusing to do so, Wolverine has been and will continue to be unjustly enriched by keeping funds or other collateral to which AAIC is entitled pursuant to the Indemnity Agreement and/or common law.

57. It would be inequitable for Wolverine to retain the benefit of AAIC's surety credit and/or the Bonds without complying with their concomitant obligations under the Indemnity Agreement and/or common law to post collateral as promised to protect AAIC from losses.

58. Under these circumstances and given the surety relationship between AAIC and Wolverine, general considerations of right and justice dictate that AAIC be granted the right to have Wolverine's assets applied to their obligation to post collateral with AAIC.

### SIXTH CLAIM FOR RELIEF
### (Declaratory Relief - Assignment)

59. AAIC incorporates by reference the allegations contained above, as though fully set forth herein.

60. An actual and substantial dispute exists between AAIC and Wolverine with respect to AAIC's right to be placed in funds and indemnified from loss under the Bonds.

61. A prompt and judicial determination of the respective rights of the parties in these respects is necessary and appropriate.

62. Pursuant to the Indemnity Agreement, Wolverine assigned certain rights to AAIC, and the assignments have been triggered by Wolverine's defaults under the Bonds and Indemnity Agreement.

63. AAIC seeks a declaratory judgment that any and all of the assignment provisions have been triggered and the assignments should be effectuated and enforced until such time that the Lien Amount is satisfied, and such amount is paid in good funds to AAIC.

## IV. CONCLUSION

WHEREFORE, for the foregoing reasons, AAIC requests judgment against Wolverine as follows and for such further relief as the Court deems proper:

- For all losses, expenses, costs and attorneys' fees, plus pre- and post-judgment interest at the maximum rate allowed by law, incurred by AAIC as a result of Wolverine's breach of the Indemnity Agreement, as well as specific performance of the same;

- For Wolverine to indemnify and hold AAIC harmless from and against any and all liabilities, losses and expenses of any kind of nature, including, but not limited to, interest, court costs, expenses and attorneys' fees, imposed upon, sustained or incurred by AAIC on account of the issuance of the Bonds;

- Due to Wolverine's failure or inability to place AAIC in sufficient funds, AAIC requests an equitable lien in the Lien Amount (including attorneys' fees, costs, and expenses) to be placed on any real property owned in whole or in part by Wolverine;

- AAIC requests a valid security interest, as collateral security in the Lien Amount, on any and all rights, title and interest of Wolverine in and to all items, property, documents, etc. identified in the Assignment (Thirteenth) paragraph of the Indemnity Agreement;

- For preliminary and permanent injunctive relief requiring Wolverine to grant access to books and records and to place AAIC in funds by money, property, liens or security interests in real or personal property, as determined by AAIC, and restraining Wolverine's sole member from

transferring, disposing or otherwise liquidating any property, real or personal, beyond reasonable living expenses, during the pendency of this matter; and

- For such further relief as the Court deems just and proper.

Respectfully submitted this 21st day of February, 2020.

THE HUSTEAD LAW FIRM
*A Professional Corporation*

*The Original Signature is on File at The Hustead Law Firm, A Professional Corporation*

Patrick Q. Hustead, Esq.  No. 6-2864
Connor L. Cantrell, Esq.  No. 7-6195
THE HUSTEAD LAW FIRM,
*A Professional Corporation*
4643 South Ulster Street, Suite 1250
Denver, Colorado 80237
Telephone: (303) 721-5000
Fax: (303) 721-5001
Email: pqh@thlf.com; clc@thlf.com
*Attorneys for Plaintiff Aspen American Insurance Company*

Address of Plaintiff:
175 Capital Boulevard
Suite 300
Rocky Hill, Connecticut 06067